IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SERGIO GARCIA, </br> Y21700, </br> </br>               **Plaintiff,** </br> </br> vs. </br> </br> IDOC, </br> WEXFORD HEALTH SOURCES, </br> J.B. PRITZKER, </br> JERMIAH BROWN, </br> LATOYA HUGHES, </br> LORIE CUNNINGHAM, </br> CARISSA LUKING, </br> MELISSA WISE, </br> MS. WELTY, </br> MR. BABISCH, </br> JAMES X. LIU, </br> JANE DOE, </br> </br>               **Defendants.** | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> )     Case No. 24-cv-1784-DWD </br> ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Sergio Garcia, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center (Lawrence), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleges that he as a serious shoulder injury that the defendants have refused to effectively treat.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that he has been suffering from shoulder problems for at least ten years, and that for the last seven years he has been in IDOC custody. (Doc. 1 at 11). He alleges that being handcuffed behind his back exacerbates his pain. He states he is "afraid its retaliation being done to [him] for filing this lawsuit." (Doc. 1 at 11). Plaintiff's complaint is not written in chronological order, but the Court will reorganize his allegations here.

Plaintiff alleges that Defendant Wise is a nurse practitioner who recommended him to an orthopedic specialist. (Doc. 1 at 13). He further alleges that after his orthopedic results came back showing a lack of cartilage and bone loss, she did not help him, despite knowing the results of the exam. (Doc. 1 at 13).

On October 24, 2023, Plaintiff saw Defendant Dr. James X Liu at an outside hospital to assess his shoulder pain. He had x-rays, which he attached to his complaint. He alleges that Dr. Liu told him he would not perform surgery until he was released from prison. (Doc. 1 at 12). The attached visit summary from Dr. Liu at Carle Orthopedics is consistent with Plaintiff's general description. After reviewing x-rays and MRIs, Dr. Liu summarized issues with both shoulders. He reported:

> Garcia is a 28 years old male with bilateral shoulder pain due to recurrent glenohumeral instability. We discussed that this will require surgery to stabilize his bilateral shoulders, but I do not recommend surgery while he is incarcerated. I am concerned that he will not be able to have the appropriate therapy postoperatively, especially with his restrictions regarding his shackles. I do not recommend moving forward with the surgery while he is incarcerated. I did recommend physical therapy for his bilateral shoulders, and I have provided a recommendation for NSAIDs.

(Doc. 1 at 18). Dr. Liu concluded that he could not offer surgical options at this time, but that he would be willing to revisit the issue with Plaintiff if/when he was released. (*Id.*). Plaintiff faults Dr. Liu for deliberate indifference because his recommendation to wait for release from custody would mean delaying Plaintiff's access to surgery for approximately the next 26 years.

On April 10, 2024, Plaintiff wrote to Defendant Governor Pritzker about his extreme shoulder pain, the recommendation for surgery, and the access to medical care he has in prison. Pritzker's office responded on April 25, 2024, that he should wait at least 30 days for a response, but as of late-July 2024, he had yet to receive a response. (Doc. 1 at 12). Plaintiff attached the letter asking him to wait for a response, or to reach out if he has additional questions. (Doc. 1 at 20).

Plaintiff alleges that on May 9, 2024, he had a call pass to see Nurse Practitioner Luking, but he was informed that it was cancelled. (Doc. 1 at 11). He then opted to go to yard. Around noon he saw Defendant Nurse Welty passing out medications at the restrictive housing building. The yard gate was close to the building, so he caught Welty's attention when she exited the building and provided his identifying information. He asked Welty for his medications, but she said he could not have his medications

because he chose to attend yard instead of waiting in his unit for medications. He claims in total he went about 15 or 16 hours between his morning and evening dose, and that Welty's denial caused him great pain. He claims that Welty knew of his need for medication because she had previously seen him during nurse sick call about his shoulder, but even with this knowledge she refused and forced him to suffer.

On June 4, 2024, Plaintiff wrote Warden Brown about his shoulder pain, and the issues he was having with call passes being cancelled. He claims he also wrote an emergency grievance, which he knew would go straight to Brown. Despite these efforts, he claims that Brown is aware of his serious medical issue but turns a blind eye and refuses to help. (Doc. 1 at 12).

On or around June 10, 2024, Plaintiff wrote to Defendant Lori Cunningham, the healthcare unit administrator. (Doc. 1 at 12). He told Cunningham about his extreme pain and the cancellation of his sick call passes, but she has not replied, and he claims she is turning a blind eye or not doing her best to help him.

On July 4, 2024, Plaintiff claims he had another call pass to see Defendant Luking, but when he asked a guard about the status of his call pass he was told it was cancelled for no reason. He claims he has not seen Luking since February 28, 2024, despite putting in numerous sick call slips asking to be seen. (Doc. 1 at 11).

On July 9, 2024, Plaintiff received medications from a Jane Doe nurse. He asked the Jane Doe what was going on with his recent medical call passes that had been cancelled. He reported to Jane Doe that he was in extreme pain. She glanced at his medication pass and said, "Mr. Garcia you keep writing grievances on Nurse Luking it

might be a while for you." (Doc. 1 at 11).  Jane Doe refused to give her name, but Plaintiff described her as a 30-something short Caucasian female, weighing around 120 pounds, with short hair.

Plaintiff alleges that Defendant Wexford is also aware of his situation because he wrote to Wexford on July 18, 2024, about his medical issue and the lack of treatment. (Doc. 1 at 12).  He alleges that he also complained that Lawrence has only one nurse practitioner for 900 inmates.  (Doc. 1 at 12).

Finally, Plaintiff alleges that Defendant Latoya Hughes is the IDOC Director, and in this role she is aware of problems with Wexford's handling of medical issues, but she does not do anything to correct these issues.  (Doc. 1 at 13).

In an affidavit filed in support of the complaint, Plaintiff alleges that he has lost cartilage in his shoulders and is now losing bone.  He claims that he wakes up in extreme pain, or with his arm feeling numb.  He receives nerve medication but claims it does not help for his shoulder pain.  He is concerned that if he cannot receive surgery until he is released in 26 years that his shoulders will deteriorate so badly he will lose an arm.  (Doc. 1 at 23).  He alleges that he was last seen by a nurse practitioner in February of 2024, and that since that time he has repeatedly been told he is on the nurse practitioner's list, but he has not been seen.  He further claims that with his shoulder injuries he is vulnerable in the prison environment and must carry contraband weapons to defend himself.  He was recently caught with such a weapon in March of 2024 and is currently serving a one-year term of segregation.  (Doc. 1 at 24).

Plaintiff seeks monetary compensation, as well as a preliminary injunction mandating that he receive emergency surgery to prevent further damage to his shoulders. (Doc. 1 at 21).

The Court designates the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendant Wise for failing to follow-up after Plaintiff's orthopedic consultation in October of 2023;**

**Claim 2:** **Eighth Amendment deliberate indifference or First Amendment retaliation claim against Defendant Luking for her handling of his shoulder injury and cancellation of his appointments after he filed a grievance;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Jane Doe (July 9) and Nurse Welty (May 9) for their interactions with Plaintiff in May and July of 2024;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendant Dr. Liu for refusing Plaintiff shoulder surgery in October of 2023;**

**Claim 5:** **Eighth Amendment deliberate indifference claim against Defendants Brown and Cunningham for their responses to Plaintiff's grievances and queries about his shoulder injury;**

**Claim 6:** **Eighth Amendment deliberate indifference claim against Defendants Pritzker or Hughes for their role in Plaintiff's care;**

**Claim 7:** *Monell* **claim against Wexford Health Sources for its role in Plaintiff's access to care.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

As a preliminary matter, Plaintiff names Defendant Dr. Babisch, who he describes as the medical director, but he does not provide any factual allegations whatsoever about Dr. Babisch. Merely naming an individual without describing their role is insufficient, so Dr. Babisch will be dismissed without prejudice. *See e.g., Black v. Lane,* 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (naming a defendant in the caption is not sufficient to state a claim). Plaintiff also named the IDOC without describing its role. Even if Plaintiff did have allegations against IDOC, it is not a "person" for purposes of § 1983 liability, so any such claim would automatically fail. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (IDOC was properly dismissed because it is not a person subject to suit under § 1983). Thus, IDOC will also be dismissed without prejudice.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific

care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges that Defendant Wise has violated his right to adequate care for his serious shoulder condition by not taking any steps beyond referring him to an orthopedic consultation, but he does not actually indicate that he ever saw Wise after he was referred for this visit. Instead, he states that in late February of 2024 (a few months after his late October 2024 orthopedic consultation) he saw Defendant Luking. On these bare allegations, there is insufficient information to plausibly suggest Wise knowingly refused to address Plaintiff's needs after referring him for a consultation. Therefore, Claim 1 against Wise is dismissed as insufficient.

By contrast, Plaintiff alleges that he saw Defendant Luking once in late-February, and that since this time his subsequent visits with Luking have been repeatedly cancelled without much information. At most, he suggests that a Jane Doe nurse told him he would not get to see Luking for quite some time because he had filed a grievance about her. This might either suggest deliberate indifference on Luking's behalf if he remains in serious pain, or perhaps it might suggest retaliation by Luking for the grievances. Although Plaintiff's allegations are relatively minimal, the Court will read the complaint broadly in his favor at this early juncture and he may proceed under the First and Eighth Amendments in Claim 2 against Defendant Luking.

In Claim 3, Plaintiff faults Jane Doe nurse for an interaction on July 9, 2024, during which she told him Luking might be refusing to see him over a grievance. He does not attribute any personal responsibility to Jane Doe about this situation with Luking, and he

does not allege that Jane Doe actually denied him any care within her scope of authority as a nurse. As such, there are insufficient factual allegations to support Claim 3 against Jane Doe nurse.

Plaintiff also faults Nurse Welty for a May 9, 2024, exchange about his medications, which he informally requested from her while he was out on the yard. At most Plaintiff claims he suffered for 15 or 16 hours between his morning and evening doses. He claims Welty should have realized he would be in extreme pain because she had seen him before at sick call for his chronic shoulder issues. However, generally a single missed dose of medication is insufficient to state a claim absent a showing that an individual sustained prolonged suffering or an independent injury from the missed dose. *See e.g., Hamilton v. Gavin*, 2023 WL 2161663, at *6-7 (N.D. Ill. Feb. 22, 2023) (collecting cases concerning missed doses of medication, generally one dose is not enough to state a claim), *but see e.g., Fields v. Miller*, 2021 WL 1400907, at *1-2 (E.D. Wisc. Apr. 14, 2021) (collecting cases on a missed dose of medication and finding that a single missed dose without any adverse effect was not sufficient to state a claim); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015) (a delay in treatment must also cause prolonged suffering or a discrete injury to state a claim). Here, it is important to note that Plaintiff asked for his medication in a non-routine setting, while he was at the yard, and that Welty refused because she said that was inappropriate. Against this backdrop, with only 15 hours of discomfort, and absent a lasting or new injury, the Court finds the that allegations against Welty about the single missed dose are insufficient to state a claim. Claim 3 shall be dismissed in full.

Next, Plaintiff faults Defendant Dr. Liu for refusing to offer immediate surgery, but this is not sufficient to state a claim because the visit notes clearly indicate that Dr. Liu did not believe surgery was medically appropriate given Plaintiff's incarceration. Dr. Liu choose an alternative option of physical therapy and medication. There is no indication that there was a subsequent visit where Plaintiff indicated this option was not helpful and that Dr. Liu persisted in ineffective care. An inmate does not have a right to demand a specific course of care, and a provider can choose between multiple alternative courses of care. Thus, the facts alleged do not form the basis for a deliberate indifference claim against Dr. Liu.

Additionally, as a doctor at an outside hospital, it is likely that Dr. Liu is not a "person" for purposes of § 1983 liability, which would also negate Plaintiff's deliberate indifference claim against him. *See e.g.*, *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 797-98 (7th Cir. 2014) ("whether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the prisoner."); *Rackemann v. Robinson*, 2019 WL 4737194 at *2-3 (S.D. Ind. Sept. 27, 2019) (granting summary judgment in favor of a doctor because he was not a 'state actor' for purposes of § 1983 where he only occasionally saw patients from the prison at a local hospital, and where he was privately employed). Thus, Claim 4 is dismissed without prejudice.

In Claim 5, Plaintiff faults Defendants Brown and Cunningham for gaining knowledge of his serious medical need from letters and an emergency grievance but failing to act to assist him. An inmate can sometimes state a claim against a prison administrator for turning a blind eye to his serious needs, but to do so he must

demonstrate that they have been made aware of his situation through highly detailed correspondence and that despite this knowledge they have refused to act. *See e.g. Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (if a prison official learns of a serious condition from an inmate's highly detailed correspondence and refuses to act, then he or she may be liable). Here, Plaintiff's allegations suggest that he may wish to present such a claim, but he does not provide much information about the contents of his correspondence to Brown or Cunningham. He also alleges that he wrote them just once only about a month and a half before he filed his complaint. He says he sent an emergency grievance, but does not indicate when he sent that, what kind of response it received, or if it was fully reviewed before he filed this lawsuit.[1] Based on the scarcity of information, Plaintiff will not be allowed to proceed against Cunningham or Brown. Claim 5 will be dismissed without prejudice.

Next, in Claim 6 Plaintiff faults Defendant Governor Pritzker and Director Hughes for his issues accessing medical care. He indicates he wrote the Governor's office just once but had yet to receive a final response at the time of this lawsuit. A letter-writing campaign to high-ranking officials is not enough to hold them liable for discrete issues with a single inmate's medical care. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (finding that writing letters to the governor and other officials like the superintendent of prisons was insufficient to form a basis for § 1983 liability because they are entitled to

---

[1] It is possible that the emergency grievance he sent to Brown is the one for which he attached the Administrative Review Board response dated May 30, 2024. (Doc. 1 at 10). However, it is not clear from the limited recitation of facts provided by the ARB if is in fact the grievance referenced by Plaintiff in the complaint, if it was submitted as an emergency, or what its contents would have relayed to Defendant Brown.

delegate the provision of good medical care to prison medical staff). Plaintiff does not allege that he contacted Hughes about his situation at all, and instead just states that because she is the IDOC Director she knows of problems with Wexford's provision of health care and should be held liable. These allegations are insufficient against Pritzker and Hughes, so Claim 6 is dismissed as insufficient.

Finally, in Claim 7 Plaintiff faults Wexford for the lack of adequate care. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Plaintiff does not have any allegations that explicitly point to a constitutionally deficient policy, custom, or practice by Wexford, so he has not stated a *Monell* claim. At most, he suggests that Wexford is understaffed relative to the inmate population, but he does not directly link understaffing to his problem with appointments, so this is not a sufficient basis for a claim.

Plaintiff's stray allegation that he sent a letter to Wexford about his situation just a week or so before filing this case is also insufficient to establish liability. This does not suggest there is a policy, custom, or practice at play, or that Wexford had specific

knowledge of his situation with any time to act.  As such, Claim 7 against Wexford is dismissed as insufficient to state a claim.

In sum, Plaintiff may proceed against Defendant Carissa Luking on Claim 2, but all other claims are dismissed without prejudice as insufficiently pled.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 2** survives initial review against Defendant Carissa Luking.  By contrast, **Claims 1 and 3-7 are dismissed without prejudice** as insufficiently pled. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants IDOC, Wexford Health Sources, Inc., J.B. Pritzker, Jermiah Brown, Latoya Hughes, Lorie Cunningham, Melissa Wise, Ms. Welty, Mr. Babisch, James X Liu, and Jane Doe, because there are no sufficient claims against these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendant Carissa Luking: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not

known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order because this case concerns medical care.

**IT IS SO ORDERED.**

Dated: October 17, 2024

*[signature]*

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.